# BIGELOW *v.* OLD DOMINION COPPER MINING AND SMELTING CO.

## ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

Nos. 191, 192.  Argued March 5, 6, 1912.—Decided May 27, 1912.

One of two joint tort-feasors was sued in the Circuit Court of the United
States for New York, jurisdiction being based solely on diversity
of citizenship, and the bill was dismissed; the other joint tort-feasor,
who resided in Massachusetts, and was not, and could not, be made
a party defendant in the New York suit, having been sued in the
state court of Massachusetts, set up the New York judgment,

claiming that under the full faith and credit clause of the Constitution of the United States the judgment dismissing a suit based on the same cause of action against one alleged to be his joint tort-feasor was a bar to the suit, and that the Massachusetts courts were bound to give to the judgment the same effect as an estoppel as against subsequent suits on the same cause of action. *Held* that:

Although one of two joint tort-feasors may be individually interested in the result of a suit against the other, the result is merely that of precedent and not of *res judicata*, and the courts of another State are not under obligation to follow the decision.

Assistance by one of two joint tort-feasors in the defense of a suit against the other, because of interest in the decision as a judicial precedent affecting a case pending against him in another State, does not create an estoppel as to the one so assisting in the defense.

Where the cause of action against joint tort-feasors is *ex delicto*, and several as well as joint, one of the tort-feasors not sued is not a privy to one that is sued so that a judgment dismissing the case against the latter is a bar to another suit against the latter.

Where the remedy of the plaintiff in a suit against one of two joint tort-feasors depends upon the defendant's own culpability, failure to recover in a prior suit on the same facts against the other is not a bar.

When dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the same right of property, and while there is diversity of opinion as to whether the estoppel can be expanded so as to include joint tort-feasors not parties, the sounder reason, as well as weight of authority, is that failure to recover against one is not a bar to a suit or an individual cause of action against the other.

Where the jurisdiction of the Circuit Court of the United States depends entirely upon diversity of citizenship, that court administers the law of the State, and its judgment is entitled to the same sanction as would attach to a judgment of a court of that State, and is entitled in the courts of another State to the same faith and credit which would be given to a judgment of the court of the State in which the Circuit Court which rendered it was sitting.

Where a judgment of the court of another State is set up as a bar, the effect of that judgment in the courts of the State which rendered it is a question of fact to be determined by the court in which it is set up.

Although a judgment dismissing the bill against one of two joint tort-feasors may be a bar in the State where rendered against a suit on

the same cause of action against the other joint tort-feasor, the courts of another State may, without denying full faith and credit to such judgment, determine for itself under principles of general law whether or not such judgment is a bar to suits against the other tort-feasor.

Under § 1 of Art. IV of the Constitution and § 905, Rev. Stat., the judgment of a court of one State when sued upon or pleaded in estoppel in the courts of another State is put upon the plane of a domestic judgment in respect to conclusiveness of the facts adjudged; otherwise it would be reëxaminable as only *prima facie* evidence of the matter adjudged as is the case with foreign judgments.

The full faith and credit clause is to be construed in the light of the other provisions of the Constitution, none of which it was intended to modify or override.

The courts of one State are not required to regard as conclusive any judgment of the court of another State which had no jurisdiction of the subject or the parties; and the courts of the State in which the judgment is set up has the right to inquire whether the court rendering it had jurisdiction to pronounce a judgment which would conclude the parties themselves or those claiming that the judgment was effective as an estoppel.

The privity that exists between a stockholder and the corporation that makes a judgment against the corporation conclusive as against the stockholder does not exist as between joint *tort-feasors*. *Hancock National Bank* v. *Farnum*, 176 U. S. 640, distinguished.

188 Massachusetts, 315, affirmed.

THE facts, which involve the question of whether the Massachusetts courts gave to a New York judgment pleaded as a bar in a Massachusetts suit the full faith and credit which is required by § 1 of Art. IV of the Constitution of the United States and § 905, Revised Statutes, are stated in the opinion.

*Mr. John C. Spooner*, with whom *Mr. George Rublee, Mr. Joseph P. Cotton, Jr., Mr. Charles H. Tyler, Mr. Owen D. Young, Mr. Burton E. Eames* and *Mr. William C. Rice* were on the brief, for plaintiffs in error:

The decrees of the Massachusetts court involve a denial of full faith and credit to the Lewisohn decree in the New York case.

The judgment of a Federal court sitting in New York is entitled in another State to the same faith and credit as a decree of a state court in New York. *Embry* v. *Palmer,* 107 U. S. 3; *Live Stock Co.* v. *Butchers' Union,* 120 U. S. 141; *Metcalf* v. *Watertown,* 153 U. S. 671; *Hancock Bank* v. *Farnum,* 176 U. S. 640; *Deposit Bank* v. *Frankfort,* 191 U. S. 499; *Riverdale Cotton Mills* v. *Alabama Mfg. Co.,* 198 U. S. 188.

The decree of a Federal court in a State must be given the same effect by the courts of that State as a decree of the state court. Cases *supra,* and see *National Foundry Works* v. *Oconto Co.,* 183 U. S. 216; *Central National Bank* v. *Stevens,* 169 U. S. 432; *Steinbach* v. *Relief Fire Ins. Co.,* 77 N. Y. 498; *Oceanic Co.* v. *Compania Translantica Espanola,* 134 N. Y. 461.

The fact that the Lewisohn decree was rendered on a demurrer does not detract from its efficacy as a bar. *Nor. Pac. Ry. Co.* v. *Slaght,* 205 U. S. 122, 130; *Yates* v. *Utica Bank,* 206 U. S. 181; *Bissell* v. *Spring Valley,* 124 U. S. 225; *Gould* v. *Evansville R. R. Co.,* 91 U. S. 526; *Alley* v. *Nott,* 111 U. S. 472; *Bouchaud* v. *Dias,* 3 Denio (N. Y.), 235, 244.

The opinions of the Circuit Court and Circuit Court of Appeals and of this court show that the bill in the Lewisohn suit was dismissed on the merits. *National Foundry Works* v. *Oconto Co., supra,* at p. 234; *Baker* v. *Cummings,* 181 U. S. 117.

It is immaterial that the present suits were begun prior to the suit against Lewisohn. *Mitchell* v. *First National Bank,* 180 U. S. 471; *Nugent* v. *Traction Co.,* 87 Fed. Rep. 251; *United States* v. *Dewey,* 6 Biss. 501; *Rogers* v. *Odell,* 39 N. H. 452; *Sharon* v. *Hill,* 26 Fed. Rep. 337, 344.

The full faith and credit clause requires that the law and usage of New York should control not only as to what is decided by the decree, but also as to who is entitled to the benefit thereof. This is the plain meaning of the

language used. *Hancock Bank* v. *Farnum*, 176 U. S. 640; *Laing* v. *Rigney*, 160 U. S. 531; *Tilt* v. *Kelsey*, 207 U. S. 43.

This result cannot be defeated by the technical Massachusetts rule which denies to alleged joint tort-feasors the benefit of former adjudication as a bar. *Renaud* v. *Abbott*, 116 U. S. 277; *Hanley* v. *Donoghue*, 116 U. S. 1; *Laing* v. *Rigney*, supra.

The question of the jurisdiction of the Federal court to render the Lewisohn decree is not to be determined by the law of Massachusetts, but by the law of New York, subject to the limitation that that law must comply with the standards of general jurisprudence. *D'Arcy* v. *Ketchum*, 11 How. 165; *Pennoyer* v. *Neff*, 95 U. S. 714; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 289; *Huntington* v. *Attrill*, 146 U. S. 657; *Embry* v. *Palmer*, 107 U. S. 3; *Renaud* v. *Abbott*, 116 U. S. 277, 288; *Rogers* v. *Alabama*, 192 U. S. 226, 231; *German Savings Society* v. *Dormitzer*, 192 U. S. 125.

Since the New York court had undoubted jurisdiction over the plaintiff in the Lewisohn suit, there is no jurisdictional objection to giving effect to that decree as against it in Massachusetts. The rule of mutuality is subject to well-recognized exceptions. There is no requirement of mutuality of estoppel in cases like the present where the plaintiff, after failing on the merits to maintain its action, brings another suit upon the same cause of action against another defendant who acted jointly with the first defendant in the transaction. *Portland Mining Co.* v. *Stratton's Independence*, 158 Fed. Rep. 63; *Emma Mining Co.* v. *Emma Mining Co. of New York*, 7 Fed. Rep. 401; *People* v. *Stevens*, 51 How. Pr. (N. Y.) 235, aff'd, 71 N. Y. 527; *Spencer* v. *Dearth*, 43 Vermont, 98; *Williams* v. *McGrade*, 13 Minnesota, 39; *King* v. *Chase*, 15 N. H. 9; *Sonnentheil* v. *Moody* (Tex. Civ. App., 1900), 56 S. W. Rep. 1001; *Sonnentheil* v. *Texas Guarantee Co.*, 23 Tex. Civ.

App. 436; *Atkinson* v. *White*, 60 Maine, 396; *Hill* v. *Bain*, 15 R. I. 75; *Ferrers* v. *Arden*, Cro. Eliz. 668; 2 Black on Judgments (2d ed., 1902), § 781; *Green* v. *Van Buskirk*, 7 Wall. 139; *Featherston* v.. *Turnpike Co.*, 71 Hun, 109; *Krolik* v. *Curry*, 148 Michigan, 214; *State* v. *Coste*, 36 Missouri, 436; *Hesselbach* v. *St. Louis*, 179 Missouri, 505; *Delaplain* v. *Kansas City*, 109 Mo. App. 107; *Montfort* v. *Hughes*, 3 E. D. Smith, 591; *Indiana Nitroglycerine Co.* v. *Lippincott Glass Co.*, 165 Indiana, 361; *Hayes* v. *Chicago Telephone Co.*, 218 Illinois, 414; *Bradley* v. *Rosenthal*, 154 California, 420; *Logan* v. *Railway Co.*, 82 S. Car. 518; *Rookard* v. *Atlanta Ry. Co.*, 84 S. Car. 190; *Biggs* v. *Benger*, 2 Ld. Raymond, 1372; *Marks* v. *Sullivan*, 8 Utah, 406, 410; *New Orleans Railroad Co.* v. *Jopes*, 142 U. S. 18; *Doremus* v. *Root*, 23 Washington, 710; *Stevick* v. *Nor. Pac. Ry.*, 39 Washington, 501; *Anderson* v. *Fleming*, 160 Indiana, 597; *Anderson* v. *Street Railroad Co.*, 200 Illinois, 329; *Muntz* v. *Algiers &c. Co.*, 116 Louisiana, 236; *Mc-. Ginnis* v. *Chicago &c. Co.*, 200 Missouri, 347; *Chicago &c. Co.* v. *McManigal*, 73 Nebraska, 580; *Tyng* v. *Clark*, 9 Hun, 269; *Miller* v. *White*, 50 N. Y. 137; *Jackson* v. *Griswold,* 4 Hill, 522.

The present cases do not involve any question of joint tort or liability *ex delicto.* These cases are clearly distinguishable from the cases where the facts alleged if proved would amount to a tort, since it was decided in the Lewisohn Case that all the facts set up do not state a cause of action. The issue in the present cases under the full faith and credit clause is the effect of the Lewisohn decree in New York, and in the Federal courts, and in that jurisdiction neither Bigelow nor Lewisohn is liable *ex delicto,* or at all. Promoters' liability, in any event, is only that of a fiduciary, and in the absence of moral wrong there is a right of contribution. *Jacobs* v. *Pollard*, 10 Cush. 287; *Palmer* v. *Wick Shipping Co.*, A. C. (1894), 318; *Armstrong County* v. *Clarion County*, 66 Pa. St. 218;

*First National Bank* v. *Avery Co.*, 69 Nebraska, 329; *Eaton & Prince Co.* v. *Trust Co.*, 123 Mo. App. 117; *Castle* v. *Noyes*, 14 N. Y. 329; *Coventry* v. *Barton*, 17 Johns. 142; *Oceanic Steam Co.* v. *Compania Transatlantic*, 134 N. Y. 461; *Andrews* v. *Murray*, 33 Barb. 354; *Peck* v. *Ellis*, 2 Johns. Ch. 131, 136; *Kolb* v. *National Surety Co.*, 176 N. Y. 233; *Getty* v. *Devlin*, 54 N. Y. 403; *Loudenslager* v. *Woodbury Land Co.*, 58 N. J. Eq. 556; *Emma Mining Co.* v. *Grant*, 11 Ch. D. 918 (940).

The principle claimed by the defendant in error that estoppels must be mutual, has, in any event, no place in the constitutional law as against the express requirement of full faith and credit.

By the law and usage of New York, the present actions against plaintiff in error, had they been pending in New York, would have been barred by the Lewisohn decree. Cases *supra*, and *Woodhouse* v. *Duncan*, 106 N. Y. 527; *Bates* v. *Stanton*, 1 Duer, 79.

Plaintiff in error is, in any event, entitled to the benefit of said decree because he was privy with Lewisohn, not only under the law of New York, but under the general principles of law. The Lewisohn action was based upon the identical subject-matter and transaction as the cases at bar. *Ferrers* v. *Arden*, Cro. Eliz. 668.

Defendant in error, by its own choice of forum and of remedy, has litigated and determined that the title to the shares of stock, which it claims were wrongfully issued to Bigelow and Lewisohn, was rightfully in them free from any interest or equity in its favor. *Bates* v. *Stanton, supra; Kessler* v. *Eldred*, 206 U. S. 285; *Bush* v. *Knox*, 2 Hun, 576.

Lewisohn was trustee, agent and representative of Bigelow in the thirty-thousand share transaction, which was the subject-matter of the Lewisohn suit in New York. *Re Straut Estate*, 126 N. Y. 201; *Bracken* v. *Atlantic Trust Co.*, 36 App. Div. 67; aff'd, 167 N. Y. 510; *Russell* v. *Lasher*,

4 Barb. 232; *Emma Mine Case, supra; Castle* v. *Noyes,*
14 N. Y. 326; *King* v. *Barnes,* 109 N. Y. 267; *Wilcox* v.
*Pratt,* 125 N. Y. 688; *Getty* v. *Devlin,* 54 N. Y. 403; 70
N. Y. 504; *Carter* v. *Bowe,* 41 Hun, 516; Freeman on Judg-
ments, § 173; New York Code Civ. Proc., § 449; Bliss,
N. Y. Ann. Code (1902), note "L."; *Lawrence* v. *Schaefer,*
19 Misc. 239; *Seymour* v. *Smith,* 114 N. Y. 481; *Duncan* v.
*China Mutual Ins. Co.,* 129 N. Y. 237; *Coffin* v. *Grand
Rapids Co.,* 136 N. Y. 655; *Hoffman House* v. *Foote,* 172
N. Y. 348; 1 Greenleaf on Evidence, p. 523; *Lichty* v.
*Lewis,* 63 Fed. Rep. 535; 77 Fed. Rep. 111.

Plaintiff in error participated in the defense of the
Lewisohn suit with the knowledge of all parties. *Carleton*
v. *Lombard,* 149 N. Y. 137; *Van Koughnet* v. *Dennie,* 68
Hun, 179; *Woodhouse* v. *Duncan,* 106 N. Y. 527; *Demarest*
v. *Darg,* 32 N. Y. 281; *Leavitt* v. *Wolcott,* 95 N. Y. 212, 221;
*Oceanic Navigation Co.* v. *Compania Transatlantic,* 144
N. Y. 663; *Rumford Chemical Works* v. *Hygienic Chemical
Co.,* 159 Fed. Rep. 436; *Port Jarvis* v. *First National
Bank,* 96 N. Y. 550.

The Lewisohn decree is equally a bar to the one hundred
thousand share suit. The question of liability in these
two suits depends upon identical facts, and both suits
involve parts of a single transaction. *Old Dominion Co.* v.
*Bigelow,* 203 Massachusetts, 159.

Where two separate suits relate to separate properties,
but the rights of the parties depend upon identical facts,
adjudication in one is a bar to the other. *Bissell* v. *Spring
Valley,* 124 U. S. 225; *New Orleans* v. *Citizens' Bank,* 167
U. S. 371; *Southern Pac. Ry. Co.* v. *United States,* 168 U. S.
1; *Nor. Pac. Ry. Co.* v. *Slaght,* 205 U. S. 122; *United States*
v. *Land Company,* 192 U. S. 355; *Green* v. *Bogue,* 158
U. S. 478; *Dimock* v. *Revere Copper Co.,* 117 U. S. 559;
*Forsyth* v. *Hammond,* 166 U. S. 506; *Johnson Co.* v. *Whar-
ton,* 152 U. S. 252; *Bouchaud* v. *Dias,* 3 Denio, 238; *Doty* v.
*Brown,* 4 N. Y. 71; *Pray* v. *Hegeman,* 98 N. Y. 351; *Park*

*Hill Co.* v. *Herriot,* 41 App. Div. 324; *Pakas* v. *Hollingshead,* 184 N. Y. 211; *Hirshbach* v. *Ketchum,* 84 N. Y. App. Div. 258.

The decree of the Massachusetts court involved denial of full faith and credit to the laws of New York and New Jersey. The full faith and credit clause requires full faith and credit to the statutory and common law of other States, as well as to their judgments. Elliot's Debates I, 80, 149, 272; V, 487, 504; *Chicago & Alton R. R. Co.* v. *Wiggins Ferry Co.,* 119 U. S. 615; *Smithsonian Institution* v. *St. John,* 214 U. S. 19, 28; *Banholzer* v. *N. Y. Life Ins. Co.,* 178 U. S. 402; *Allen* v. *Alleghany Co.,* 196 U. S. 458; *Johnson* v. *N. Y. Life Ins. Co.,* 187 U. S. 491; *Glenn* v. *Garth,* 147 U. S. 360; *Finney* v. *Guy,* 189 U. S. 335, 340; *Louisv. & Nashv. R. R.* v. *Melton,* 218 U. S. 36.

In the present cases full faith and credit has been denied to the common law and statutes of New York and New Jersey. Since the court below took judicial notice of the laws of New Jersey, this court should do so likewise. *Renaud* v. *Abbott,* 116 U. S. 277, 285, 286; *Liverpool Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397, 445; *Eastern Building Association* v. *Williamson,* 189 U. S. 122.

Under the statutes and decisions of New Jersey, the Old Dominion Company was fully organized and of full capacity to make the contract which was made with the plaintiff in error and Lewisohn. See authorities discussed *post.*

The decisions of New York were put in evidence at the trial in Massachusetts.

The Massachusetts decrees involve an impairment of the obligation of the contract between the plaintiff in error and Lewisohn on the one side, and the defendant in error on the other side.

The question whether a valid contract existed is to be determined by this court, when it is claimed that the obligation of such contract is impaired. *McCullough* v.

*Virginia,* 172 U. S. 102; *Douglas* v. *Kentucky,* 168 U. S. 488; *Mobile & O. R. Co.* v. *Tennessee,* 153 U. S. 486, 492.

The corporation was fully organized and existing and competent, under the laws of the State of its organization, to make this contract. This court will take judicial notice of the foreign law where the court below did so. See authorities *supra.* The Massachusetts court fully considered the New Jersey law relating to the organization and capacity of the defendant in error.

See opinion below, especially dissenting opinion by Mr. Chief Justice Knowlton.

Under the New Jersey law the corporation was fully organized and competent to bind itself by this contract. *Old Dominion Co.* v. *Lewisohn,* 210 U. S. 206; *Old Dominion Co.* v. *Bigelow,* 203 Massachusetts, 159.

The discussion on this point in *Bigelow* v. *Old Dominion Company,* 74 N. J. Eq. 457, was *obiter,* and not supported by the authorities cited. The transaction between the plaintiff in error and Lewisohn on the one side and the defendant in error on the other side gave rise to a valid and binding contract. The contract was created in the State of New York, by the vote of the Board of Directors accepting the offers to convey the property. The rule that validity of the contract was to be governed by the law of the place of performance is always applied in aid of the contract and never for the purpose of finding it invalid. *Pritchard* v. *Norton,* 106 U. S. 124, 137; *Hall* v. *Cordell,* 142 U. S. 116; *London Assurance Co.* v. *Companhia De Moagens,* 167 U. S. 149; *Liverpool Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397, 458.

The contract was fully executed by the parties and, as an executed contract, it was as far immune from attack under the laws of New York as while it was executory. *Fletcher* v. *Peck,* 6 Cranch, 87, 136; Cooley on Con. Lim., 7th ed., pp. 384, 385.

The New York law as established by the decided cases

before this contract was entered into made this contract valid and not voidable. *Parsons* v. *Hayes*, 14 Abb. N. C. 419; *Barr* v. *Railroad Company*, 125 N. Y. 263; *Seymour* v. *Cemetery Ass'n*, 144 N. Y. 333; *Thornton* v. *Wabash Ry. Co.*, 81 N. Y. 462; *King* v. *Barnes*, 109 N. Y. 267, 288; *Langdon* v. *Fogg*, 18 Fed. Rep. 5; *Stewart* v. *St. Louis R. R. Co.*, 41 Fed. Rep. 736; *DuPont* v. *Tilden*, 42 Fed. Rep. 87; *Wood* v. *Water Works Co.*, 44 Fed. Rep. 146; *Foster* v. *Seymour*, 23 Fed. Rep. 65; *McCracken* v. *Robinson*, 57 Fed. Rep. 375.

Many cases subsequent to the present contract sustain the same rule. *Hutchinson* v. *Simpson*, 92 App. Div. 382; *Insurance Press* v. *Montauk Wire Co.*, 103 App. Div. 472; *Blum* v. *Whitney*, 185 N. Y. 232.

There is a vital distinction between "future allottees" who supply money through the payment for their stock which is to go into the pockets of the promoters in payment for the property conveyed by them to the corporation, and cases like the present where the issue of stock to "future allottees" is independent of the initial transaction and does not benefit the promoters. The Massachusetts decrees involve an impairment of the contract within the decisions of this court. The liability imposed upon the plaintiff in error by the Massachusetts decrees, necessarily involves a denial of the binding force of the contract, not by reason of any extensive equity, but upon a finding in substance that the defendant in error never became bound. *Old Dominion Company* v. *Bigelow*, 188 Massachusetts, 315, 328, 329.

Such avoidance of the contract which was valid by the laws under which it arose, constitutes an impairment. The question of impairment of contract by judicial decision has been found to exist in many cases originating in the Circuit Courts of the United States. *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Township of Pine Grove* v. *Talcott*, 19 Wall. 666;

*Pleasant Township* v. *Ætna Life Insurance Co.*, 138 U. S. 67; *Butz* v. *Muscatine*, 8 Wall. 575; *Anderson* v. *Santa Anna*, 116 U. S. 356; *Folsom* v. *Ninety-six*, 159 U. S. 611; *Stanley County* v. *Coler*, 190 U. S. 437; *Harris* v. *Jex*, 55 N. Y. 421; *Douglass* v. *County of Pike*, 101 U. S. 677; *Great Southern Fire Proof Hotel Company* v. *Johnson*, 193 U. S. 532.

The *Great Southern Hotel Case* involved a purely private contract. The same rule as to impairment by judicial decision has recently been established by this court in similar cases coming here by writ of error to the state court. *Muhlker* v. *New York & Harlem R. R. Co.*, 197 U. S. 594; *Sauer* v. *City of New York*, 206 U. S. 536.

The *Muhlker Case* involved merely the reversal of the rule of the common law by the state court and not the interpretation of any statute. The present case is stronger in favor of the plaintiff in error than the *Muhlker Case*, because the plaintiff in error is not seeking a reversal of the rule established in New York, but rather its enforcement; and the present case involves the actual setting aside of the New York contract by the courts of another State. See opinion of Mr. Justice Holmes in *Old Dominion Company* v. *Lewisohn*, 210 Massachusetts, 206. The Massachusetts decrees also constitute an impairment of the contract, in that they deny the power or capacity of the defendant in error under the laws of New Jersey to bind itself with respect thereto, and thereby they misinterpret the statutes of New Jersey relating to corporations. General Statutes of New Jersey, 1895, Vol. 1, pages 907 *et seq.;* dissenting opinion of Mr. Chief Justice Knowlton in the present case below; *Bickley* v. *Schlag*, 46 N. J. Eq. 533, 535; *Donald* v. *American Smelting Company*, 62 N. J. Eq. 729, 733.

The Massachusetts decrees involve denial to the plaintiff in error of due process of law.

The due process clause operates not only as a limita-

tion upon state legislatures, but also to restrain the state courts from denying the substance of due process, even though after hearing and after compliance with all the jurisdictional forms. *Virginia v. Rives,* 100 U. S. 313; *Ex parte Virginia,* 100 U. S. 339; *Scott* v. *McNeal,* 154 U. S. 34; *Chicago, Burlington & Quincy R. R.* v. *Chicago,* 166 U. S. 226; *Reynolds v. Chicago Traction Co.,* 207 U. S. 20.

Due process is denied by judicial decision (as distinguished from mere error) whenever fundamental principles are disregarded or vested rights acquired under settled rules of local law are divested by reversal of such settled rules, or by a decision in violation thereof. *Muhlker* v. *New York & Harlem R. R. Co., supra; In re Kemmler,* 136 U. S. 436, 448; *Davidson* v. *New Orleans,* 96 U. S. 97; *Hurtado* v. *California,* 110 U. S. 516; *Brown* v. *Levee Commissioners,* 50 Mississippi, 468; *Wulzen* v. *San Francisco,* 101 California, 15; *In re Ah Lee,* 5 Fed. Rep. 899; *Duke of Norfolk's Case,* 3 Ch. Cas. 1, 33.

The Massachusetts decrees involve retroactive judicial legislation, impairing rights of the plaintiff in error which were vested under the settled rules of law in New York. (The laws of New York and New Jersey have been examined in the preceding section.) This court will decide for itself as to the New York law. *Huntington* v. *Attrill,* 146 U. S. 657, 683, 684; *Scott* v. *McNeal,* 154 U. S. 34, 35; *Laing* v. *Rigney,* 160 U. S. 531; *Great Western Telegraph Co.* v. *Purdy,* 162 U. S. 329; *Eastern Building Ass'n* v. *Williamson,* 189 U. S. 122, 127; *Finney* v. *Guy,* 189 U. S. 335, 340; *Harding* v. *Harding,* 198 U. S. 317, 331, 335; *Tilt* v. *Kelsey,* 207 U. S. 43, 57, 58.

Retrospective laws cannot be enacted to deprive parties of property rights previously vested. *Medford* v. *Learned,* 16 Massachusetts, 215; *Addams* v. *Marx,* 50 N. J. Law, 253; *Towle* v. *Eastern Railroad,* 18 N. H. 547.

The decision of the Massachusetts court falls within

the same prohibition. *Old Dominion Company* v. *Lewisohn*, 210 U. S. 206.

The Massachusetts decrees create a fictitious obligation to the defendant in error as to the transaction in question *nunc pro tunc* by virtue of subsequent acts, although at the time of the transaction it fully consented thereto and although the subsequent acts involved no breach of duty toward it.

The Massachusetts decrees also involve a denial of due process in holding the plaintiff in error liable *in solido*.

The rule of promoters' liability has always rested upon the principle that the promoter is a fiduciary. His obligation is purely equitable and does not rest upon the theory that he commits a tort. Any profit received by him is charged with a constructive trust. The Massachusetts decision holds the plaintiff in error liable for what he did not receive. The case is not one involving defalcation or loss to a trust estate, and so is not within those cases which hold one trustee liable for defaults of his co-trustee. No such rule existed when the contract in question was made, and it is now attempted to be imposed retroactively by a judicial decision of the Massachusetts court.

*Mr. Edward F. McClennen* and *Mr. Louis D. Brandeis* for defendants in error.

MR. JUSTICE LURTON delivered the opinion of the court.

The question upon which these cases have been brought to this court is whether the Massachusetts court gave to a New York judgment pleaded as a bar to a Massachusetts suit that full faith and credit required by the first section of Art. IV of the Constitution of the United States, and § 905, Revised Statutes, enacted in pursuance thereof.

The Old Dominion Copper and Smelting Company, hereafter designated the Copper Company, a corporation

of New Jersey, filed two bills in an equity court of Massachusetts against the plaintiff in error, Albert S. Bigelow, to recover secret profits realized by him, and an associate, one Lewisohn, as organizers or promoters of the Copper Company, in selling the mining properties of another corporation, called the Baltimore Company, and certain neighboring properties, designated in the transcript, "outside properties.'

The two sales were for distinct considerations. The bills alleged that when these sales were made the Copper Company was under the absolute control of the two promoters, Bigelow and Lewisohn, and that they divided the profits between them. The fundamental facts in each case were the same. The two cases were heard together in the state courts, and are now heard as if one case, though upon separate writs and distinct records.

Demurrers were interposed and overruled. The allegations of the bills are fully shown in 188 Massachusetts, 315, where one of the cases was considered on demurrer. Answers were then filed and a great mass of evidence taken. Upon a full hearing the allegations of the respective bills were held to be sustained by the proofs and final decrees were rendered for the plaintiff in sums aggregating $2,178,673.33. The decrees were affirmed in the Supreme Judicial Court.

The Federal question, upon which the judgment of this court is sought, arose in this wise: Bigelow, the plaintiff in error here, was a citizen of Massachusetts, and was, therefore, sued in the courts of that State. Lewisohn, who was Bigelow's associate promoter, was a citizen of New York. He was, therefore, sued separately in the Circuit Court of the United States for the Southern District of New York. The bills filed there were identical in every essential with those filed in Massachusetts. In the two sets of bills it was alleged that Bigelow and Lewisohn were joint promoters of the Copper Company, and

as such made the sales to it while under their entire control, and that they had realized fraudulent profits. Demurrers were interposed in the New York cases, which were sustained, and the bills dismissed. These judgments were affirmed in the Circuit Court of Appeals for the Second Circuit. The judgment in one of these cases (*Old Dominion Copper Co.* v. *Lewisohn*), that relating to the sale of the "outside properties," was brought to this court by certiorari and affirmed, the opinion being by Mr. Justice Holmes, 210 U. S. 206, where the facts of the case are stated.

The final decree in one of the New York cases was pleaded in a supplemental answer in the pending Massachusetts cases as a bar to the suits against Bigelow. The Massachusetts court adjudged that Bigelow was neither a party nor a privy to the New York suits, and was, therefore, not protected by the judgment therein.

To conclude Bigelow by the New York judgment, it must appear that he was either a party or a privy. That he was not a party to the record is conceded. He had no legal right to defend or control the proceedings, nor to appeal from the decree. He was, therefore, a stranger, and was not concluded by that judgment as a party thereto. That he was indirectly interested in the result because the question there litigated was one which might affect his own liability as a judicial precedent in a subsequent suit against him upon the same cause of action is true, but the effect of a judgment against Lewisohn as a precedent is not that of *res judicata*, and the Massachusetts court was under no obligation to follow the decision as a mere judicial precedent. Nor would assistance in the defense of the suit, because of interest in the decision as a judicial precedent which might influence the decision in his own case, create an estoppel as to Bigelow. *Stryker* v. *Goodnow*, 123 U. S. 527. Also *Rumford Chem. Works* v. *Hygienic Chem. Co.*, 215 U. S. 156.

But it is said that if Bigelow was not in every sense a party, he was privy to Lewisohn, who was, and that the estoppel of the adverse judgment in the suit against Lewisohn protected Bigelow as well.

But would that judgment, if it had been for the plaintiff in that case, have bound Bigelow in a subsequent suit by the same plaintiff upon the same facts? If not, upon what principle may he claim the advantage of it as a bar to the present suit? The cause of action was one arising *ex delicto.* It was several as well as joint. The right of action against both might have been extinguished by a settlement with one, or by a judgment against one, and satisfaction. But the claim has come in substance to this, that although the plaintiff had a remedy against Lewisohn and Bigelow severally or jointly, a failure to recover in an action against one is a bar to his action against the other, the facts being the same, although there has been no satisfaction for the injury done. The only basis upon which such a result can be asserted is that Bigelow would have been bound by the judgment if it had been adverse to Lewisohn, and may, therefore, shelter himself behind it since it was favorable to his joint wrongdoer.

It is a principle of general elementary law that the estoppel of a judgment must be mutual. *Railroad Co.* v. *National Bank,* 102 U. S. 14; *Keokuk & W. Railroad* v. *Missouri,* 152 U. S. 301; Freeman on Judgments, § 159; Greenleaf on Evidence, 13th ed., vol. 1, § 524. The mutuality of estoppel by judgment is fully recognized in both the New York and Massachusetts decisions: *Atlantic Dock Co.* v. *New York,* 53 N. Y. 64; *Brigham* v. *Fayerweather,* 140 Massachusetts, 411, 415; *Nelson* v. *Brown,* 144 N. Y. 384.

An apparent exception to this rule of mutuality has been held to exist where the liability of the defendant is altogether dependant upon the culpability of one exonerated in a prior suit, upon the same facts, when sued by the

same plaintiff.  See *Portland Gold Mining Co.* v. *Stratton's Independence,* 158 Fed. Rep. 63, where the cases are collected.  The unilateral character of the estoppel of an adjudication in such cases is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another, when that other has been exonerated in a direct suit. · The cases in which it has been enforced are cases where the relation between the defendants in the two suits has been that of principal and agent, master and servant, or indemnitor and indemnitee.

The principle upon which one may avail himself of the effect of a judgment adverse to the plaintiff in a former suit, against the immediate actor, is thus stated in *New Orleans & N. E. R. R. Co.* v. *Jopes,* 142 U. S. 18, 24, 27:

"It would seem on general principles that if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to like immunity. . . . If the immediate actor is free from responsibility because his act was lawful, can his employer, one taking no direct part in the transaction, be held responsible? . . . The question carries its own answer; and it may be generally affirmed that if an act of an employeé be lawful, and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor."

It is too evident to need argument that the remedy of this plaintiff does not depend upon the culpable conduct of Lewisohn, but upon Bigelow's own wrong, whether alone or in coöperation with Lewisohn.  The liability of each was several as well as joint, and a failure to recover against one is no bar to a suit against the other upon the same facts.  But a judgment not only estops those who were actually parties but also such persons as were represented by those who were or claim under or in privity with them.

What is privity?  As used when dealing with the es-

toppel of a judgment, privity denotes mutual or successive relationship to the same right of property. *Litchfield* v. *Goodnow*, 123 U. S. 549. The ground upon which privies are bound by a judgment, says Prof. Greenleaf, in his work upon Evidence, 13th ed., vol. 1, § 523, "is, that they are identified with him in interest; and wherever this identity is found to exist, all are alike concluded. Hence, all privies, whether in estate, in blood, or in law, are estopped from litigating that which is conclusive upon him with whom they are in privity."

But it is said that the relationship of joint tort-feasors is such as to constitute privity, and that a judgment in a suit in favor of one upon the same identical cause of action, is a bar to a suit by the same plaintiff against the other wrongdoer. Whether the estoppel of a judgment is to be confined to those who were actually parties or privies in estate or interest, or may be expanded so as to include joint tort-feasors, not actually parties, is a question concerning which there is some diversity of opinion. But, as we shall later see, the sounder reason, as well as the weight of authority, is that the failure to recover against one of two joint tort-feasors is not a bar to a suit against the other upon the same facts.

Passing this for the time, we come to a consideration of the contention that whatever the general law upon this subject, if such was the effect of such a judgment under the law of New York, it was the duty of the Massachusetts court, under the full faith and credit clause, to give it like effect in the present suit.

That the judgment in question is entitled to the same sanction which would attach to a like judgment of a court of the State of New York, is plain. The United States court was in the exercise of jurisdiction to administer the laws of the State; since its jurisdiction depended solely upon diversity of citizenship. Its judgment is, therefore, entitled in the courts of another State to the

VOL. CCXXV—9

same faith and credit which would attach to a judgment
of a court of the State of New York. *Dupasseur* v. *Roch-
ereau,* 21 Wall. 130; *Deposit Bank* v. *Frankfort,* 191 U. S.
499, 514. What, then, is the effect of such a judgment,
under the law of New York, as an estoppel in a subsequent
suit upon the same facts by the same plaintiff against
Bigelow. This was a question of fact in the Massachu-
setts court: *Hanley* v. *Donoghue,* 116 U. S. 1. Expert legal
opinion is favorable to the view urged by the plaintiff in
error, though the ground upon which such a consequence
rests is by no means clear. The highest courts of New
York have not clearly decided the precise question here
presented. The cases referred to or commented upon by
the witnesses cannot be said to clearly point to the con-
clusion claimed. Nevertheless, the Massachusetts court,
treating the question as one of fact, accepted the view
that under the law of New York this judgment would
have been a bar to another suit upon the same facts
against Bigelow, in the courts of New York. We shall do
likewise. The Massachusetts courts held that under the
general law, which was the applicable law of Massachu-
setts, the New York court had no such jurisdiction over
the person of Bigelow as to affect him, either as a party
who might have controlled the case or appealed from the
judgment, and that he was in no sense such a privy as to
be bound by it. Upon the general law as to the estoppel
of such a judgment, that court said:

"This can hardly be regarded as an open question in
this Commonwealth. In *Sprague* v. *Oakes,* 19 Pick. 455,
which was an action for trespass *quare clausum fregit,* it
was said, respecting such a defense, 'The defendant was
neither a party nor privy to that judgment, was not
bound by it, nor could he take advantage of it.' This case
has never been overruled or questioned and must be re-
garded as stating the law of this Commonwealth. There
are other authorities to the same point. *Lansing* v.

*Montgomery*, 2 Johns. 382; *Marsh* v. *Berry*, 7 Cowen, 344; *Moore* v. *Tracy*, 7 Wend. 229; *Gittleman* v. *Feltman*, 122 App. Div. (N. Y.) 385; *Atlantic Dock Co.* v. *Mayor and Aldermen of New York*, 53 N. Y. 64; *Tyng* v. *Clark*, 9 Hun, 269; *Calkins* v. *Allerton*, 3 Barb. 171, 174; *Goble* v. *Lillon*, 86 Indiana, 327; *Thompson* v. *Chicago, St. Paul & Kansas City Railroad*, 71 Minnesota, 89; *Three States Lumber Co.* v. *Blanks*, 118 Tennessee, 627. 'The reasons upon which these decisions rest is that there can be no estoppel arising out of a judgment, unless the same parties have had their day in court touching the matter litigated, and unless the judgment is equally available to both parties. It requires no discussion to demonstrate that a judgment in the Lewisohn suit against the defendant would not have fixed liability upon the present defendant. Hence there can be no estoppel under our law or under the general principles of jurisprudence, because it is not mutual. *Brigham* v. *Fayerweather*, 140 Massachusetts, 411, 415; *Dallinger* v. *Richardson*, 176 Massachusetts, 77, 83; *Worcester* v. *Green*, 2 Pick. 425, 429; *Biddle & Smart Co.* v. *Burnham*, 91 Maine, 578; *Moore* v. *Albany*, 98 N. Y. 396. 'Estoppels to be good must be mutual.' *Litchfield* v. *Goodnow*, 123 U. S. 549, 552; *Nelson* v. *Brown*, 144 N. Y. 384, 390. Bigelow could not have appeared as of right and made a defense to that suit. No judgment can be regarded as *res judicata* as to any matter where the rights in the subject-matter arise out of mutuality, and not by succession, unless the party could, as matter of right, appear and defend, even though he may have had knowledge of the suit. Otherwise, he might be bound by a judgment as to which he had never had the opportunity to be heard, which is opposed to the first principles of justice. *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Massachusetts, 228, 233. There is no privity between joint wrongdoers, because all are jointly and severally liable. *Corey* v. *Havener*, 182 Massachusetts, 250; *Feneff*

.v. *Boston & Maine Railroad,* 196 Massachusetts, 575, 581.;
*Pinkerton* v. *Randolph,* 200 Massachusetts, 24, 28.   There
is no right of contribution between joint wrongdoers,
where they are in *pari delicto* with each other.   *Churchill*
v. *Holt,* 127 Massachusetts, 165.   They are equally cul-
pable, and the wrong complained of results from their
joint effort."   .

· The cause of action was one arising *ex delicto* and the
liability of Lewisohn and Bigelow was several as well as
joint.  In many cases this court has held that a judgment
without satisfaction against one of two joint trespassers
is no bar to another action against the other for the same
tort.   The common law imposes upon each joint tort-
.feasor the burden of bearing the entire loss which he, in
coöperation with another, has inflicted.   The injured
person may sue those who coöperated in the commission
of the tort together, or he may sue them singly.  He may
recover against less than all if he sue them jointly, and
may have a judgment for unequal sums against all who
are joined in the suit.   Or, if he sue one such wrongdoer
and recover judgment, he is not estopped from suing
another upon the same facts unless his first judgment has
been fully satisfied. *Lovejoy* v. *Murray,* 3 Wall. 1; *Sessions.*
v. *Johnson,* 95 U. S. 347, 348; *The Beaconsfield,* 158 U. S.
303.·  If Lewisohn and Bigelow were severally liable, and
a judgment against one without full satisfaction was not
a bar to a suit against the other, it is difficult to see why a
failure to obtain a judgment against one should be an
answer to a suit against the other, who was not a party to
the first suit.   That a failure to recover in one suit against
one such tort-feasor is not a bar to a suit in the courts of
another State against another, who was not a party to
.the first suit, seems to be supported by considerations of
justice and the weight of authority. ·

But did the Massachusetts court deny full faith and
credit to the New York judgment by denying to it the

effect of estoppel which attached to it in the courts of New York, or may it determine for itself under principles of general law whether the judgment was a bar to the suit against Bigelow?

The answer must turn upon the construction and effect of the full faith and credit clause of the Constitution, and the act of Congress giving effect thereto. Section 1, Article IV of the Constitution reads as follows:

"Full faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

The act of Congress of May 26, 1790 (1 Stat. 122, c. 11), now § 905, Revised Statutes, reads as follows:

"The acts of the legislature of any State or Territory, or of any country subject to the jurisdiction of the United States, shall be authenticated by having the seals of such State, Territory, or country affixed thereto. The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

The effect of this clause is to put the judgment of a court of one State, when sued upon, or pleaded in estoppel, in the courts of another State, upon the plane of a domestic judgment in respect of conclusiveness as to the facts adjudged. But for this provision such state judgments would stand upon the footing of foreign judg-

ments which are examinable when sued on in the courts of
another country, being only *prima facie* evidence of the
matter adjudged. *D'Arcy* v. *Ketchum,* 11 How. 165, 175.
Thus in *Hanley* v. *Donoghue,* 116 U. S. 1, 4, it is said:

"Judgments recovered in one State of the Union, when
proved in the courts of another, differ from judgments
recovered in a foreign country in no other respect than
that of not being reëxaminable upon the merits, nor im-
peachable for fraud in obtaining them, if rendered by a
court having jurisdiction of the cause and of the parties."
Citing *Buckner* v. *Finley,* 2 Pet. 592; *M'Elmoyle* v. *Cohen,*
13 Pet. 312, 324; *D'Arcy* v. *Ketchum,* 11 How. 165, 176;
*Christmas* v. *Russell,* 5 Wall. 290, 305; *Thompson* v. *Whit-
man,* 18 Wall. 457.

The requirement of full faith and credit is to be read
and interpreted in the light of well-established principles
of justice protected by other constitutional provisions
which it was never intended to modify or override.

It is therefore well settled that the courts of one State
are not required to regard as conclusive any judgment of
the court of another State which had no jurisdiction of
the subject or of the parties. *D'Arcy* v. *Ketchum,* 11 How.
165; *Board of Public Works* v. *Columbia College,* 17 Wall.
521, 528; *Thompson* v. *Whitman,* 18 Wall. 457; *Hanley*
v. *Donoghue,* 116 U. S. 1, 4; *Huntington* v. *Attrill,* 146 U. S.
657, 685; *Hall* v. *Lanning,* 91 U. S. 160.

Mr. Justice Story, in his commentaries on the Conflict
of Laws, § 609, says:

"It (the Constitution) did not make the judgments of
other states domestic judgments to all intents and pur-
poses, but only gave a general validity, faith, and credit
to them as evidence. No execution can issue upon such
judgments without a new suit in the tribunals of other
states. And they enjoy not the right of priority, or privi-
lege, or lien which they have in the state where they are
pronounced, but that only which the *lex fori* gives to

them by its own laws in their character of foreign judgments."

The general effect of a judgment of a court of one State when relied upon as an estoppel in the courts of another State is that which it has, by law or usage, in the courts of the State from which it comes. But the faith and credit to be accorded does not preclude an inquiry into the jurisdiction of the court which pronounced the judgment, or its right to bind the persons against whom the judgment is sought to be enforced.

Referring to the case of *Mills* v. *Duryee*, 7 Cranch, 481, where the language used was supposed to indicate that the effect to be given to the judgment of one State by the courts of another was in all respects that which attached to domestic judgments, Mr. Justice Bradley, speaking for this court in *Thompson* v. *Whitman*, 18 Wall. 457, 462, said that *Mills* v. *Duryee* had never been departed from "where the questions were not questions of jurisdiction. But where the jurisdiction of the court which rendered the judgment has been assailed, quite a different view has prevailed. Justice Story, who pronounced the judgment in *Mills* v. *Duryee*, in his Commentary on the Constitution, after stating the general doctrine established by that case with regard to the conclusive effect of judgments of one State in every other State, adds: 'But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given, to pronounce it; or the right of the State itself to exercise authority over the person or the subject-matter. The Constitution did not mean to confer (upon the States) a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within their territory.'"

The conclusiveness of the judgment relied upon in *Thompson* v. *Whitman* depended upon the locality of a certain seizure by the authorities of New Jersey under an act regulating the fisheries of that State. The question

was whether a record finding of jurisdictional facts could be contradicted. The holding of the court was that the jurisdiction could be assailed by evidence of facts contradicting those found to exist by the record pleaded as an estoppel. That case has since been accepted as determining that the binding effect of a judgment of one State, when pleaded as an estoppel in the courts of another, is open to challenge by assailing an officer's return of service, or the authority of one who assumed to accept service, or to enter an appearance, even though the judgment includes a finding of the facts necessary to confer jurisdiction. It would seem to follow that the Massachusetts court had the legal right to inquire, not only whether Bigelow was a party to the New York judgment in the sense that he might have appeared and defended, or appealed from it, but whether the cause of action and the relation of Bigelow to it, or to the parties, was such that the New York court could pronounce a judgment which would bind him, or conclude the plaintiff from suing him upon the same facts. *Knowles* v. *Gaslight Co.*, 19 Wall. 58; *Cooper* v. *Newell*, 173 U. S. 555, 556.

Bigelow was a citizen of and domiciled in Massachusetts. He was not found within the State of New York. Indeed, the pleadings in the New York court stated that he was not sued because he did not reside within the State. A judgment rendered upon constructive service against one domiciled within the State may be a good judgment *in personam* in that State, though void when sued upon outside the State. *Pennoyer* v. *Neff*, 95 U. S. 714. In *Goldey* v. *Morning News*, 156 U. S. 518, 521, it is said:

"It is an elementary principle of jurisprudence, that a court of justice cannot acquire jurisdiction over the person of one who has no residence within its territorial jurisdiction, except by actual service of notice within the jurisdiction upon him or upon some one authorized to accept service in his behalf, or by his waiver, by general appear-

ance or otherwise, of the want of due service. Whatever effect a constructive service may be allowed in the courts of the same government, it cannot be recognized as valid by the courts of any other government."

See also the thorough discussion of this question in *Haddock* v. *Haddock*, 201 U. S. 562, 567, 573.

The New York court had no jurisdiction to render a judgment *in personam* against Bigelow. He was confessedly not a party. He did not voluntarily appear. He had no legal right to appear, no right to introduce evidence, control the proceedings, nor appeal from the judgment. To say that nevertheless the judgment rendered there adverse to the plaintiff in that case may be pleaded by him as a bar to another suit by the same plaintiff upon the same facts, because such is the effect of that judgment by the usage or law of New York, would be to give to the law of New York an extra-territorial effect, which would operate as a denial of due process of law. Whatever the effect of that judgment as an estoppel under the law of New York, it cannot be held an estoppel in a suit in the courts of another State between the same plaintiff and a different defendant who was not a party to the first suit. *D'Arcy* v. *Ketchum*, 11 How. 165, is clearly in point. Under a New York statute a court of that State entered judgment against a non-resident defendant who was not served and did not appear. The judgment was entered under authority of a statute permitting judgment against joint debtors where only one was notified. The non-resident defendant was sued upon this judgment, perfectly good under the decisions of New York, in the courts of Louisiana. This court, after full consideration, held that the jurisdiction of the New York court to render a personal judgment against a non-resident was open to inquiry, and that it was not to be given the effect it plainly had under the law of New York, because that court had no jurisdiction over the person of the defendant. This

case was followed in *Board of Public Works* v. *Columbia College,* 17 Wall. 521, 527, which involved the effect of a joint judgment against five persons as joint debtors, two of whom were non-residents, and were not served and did not appear. This judgment was held not to be evidence against the partners who had not appeared. Touching the effect of that judgment, this court said:

"It is sufficient for the disposition of this case that the judgment is not evidence of any personal liability of Withers outside of New York. It was rendered in that State without service of process upon him, or his appearance in the action. Personal judgments thus rendered have no operation out of the limits of the State where rendered. Their effects are merely local. Out of the State they are nullities, not binding upon the non-resident defendant, nor establishing any claim against him. Such is the settled law of this country, asserted in repeated adjudications of this court and of the state courts."

"The judgment in New York, it is true, is a joint judgment against all of the partners, against those summoned by publication as well as those who were served with process or appeared, but this joint character cannot affect the question of its validity as respects those not served. The clause of the Federal Constitution which requires full faith and credit to be given in each State to the records and judicial proceedings of every other State, applies to the records and proceedings of courts only so far as they have jurisdiction. Wherever they want jurisdiction the records are not entitled to credit."

*Hall* v. *Lanning,* 91 U. S. 160, was an action in a United States court for the District of Illinois upon a New York judgment against a New York partnership. It appeared that the suit in which the judgment sued upon was obtained was against all of the members of a firm upon a joint liability. The members of the partnership who were residents and were actually served assumed the right to

enter the appearance of certain non-residents, who were not and could not be notified. In the action upon this joint judgment one of the defendants claimed the right to deny the jurisdiction of the New York court to pronounce a judgment against him upon the ground that he had not been summoned, had not personally appeared and was not concluded by an appearance entered for him by his co-partners, the firm having theretofore been dissolved. The case was distinguishable from *D'Arcy* v. *Ketchum* and *Board of Public Works* v. *Columbia College*, because the partners actually served assumed authority to enter the appearance of the non-residents who were not served. The debt sued upon was a partnership debt. The contention was that the relation of partnership conferred upon partners, even after dissolution, the right to appear for their co-partners in a suit against the firm. As a question of general law, this court held that although the judgment was valid under the laws and usage of New York, at the common law no such right existed after dissolution and that the requirement of full faith and credit did not compel the courts of another State to give effect to the judg-ment as against the non-resident member of the firm who had not been served.

From these cases it is clear that the conclusive effect of a judgment *in personam* which is to be recognized when questioned in the courts of another State depends upon whether it is the judgment of a court which had jurisdiction over the person of the defendant sought to be bound. The estoppel here insisted upon is grounded not upon actual notice or appearance, but upon a theory as to the relation between joint tort-feasors under the laws of New York. If the Massachusetts court was of opinion that under the general law that relationship was not such as to make Bigelow a party by either privity or representation, it was under no obligation to treat the New York judgment as a bar to the suit in which it was pleaded.

The binding effect of the judgment sued upon in *Hall v. Lanning*, cited above, turned upon the implied power of one member of a dissolved firm to enter the appearance of his non-resident partners in a suit upon a joint debt. Under the decisions of the New York courts such a judgment bound the members whose appearance was so entered. But this court held that full faith and credit was not denied by a determination of the power of one partner to so enter the appearance of a non-resident partner and held that no such power existed.

In *Bagley v. General Fire Extinguisher Co.*, 212 U. S. 477, 480, the facts were these: A tenant recovered judgment against his landlord resulting from the melting of sprinkler heads in an automatic sprinkler put up in plaintiff's building by the defendant. The plaintiff gave the defendant notice to defend, which it ignored. The suit was to recover the money so paid by the landlord. It was claimed that negligence in construction was made out by the judgment rendered against the plaintiff in favor of the tenant in a court of the State of Michigan. That judgment was relied upon as estopping the defendant, who it was claimed had notice, and was, under its contract, bound to defend. The court said:

"The defendant was no party to that judgment, and there is nothing in the Constitution to give it any force as against strangers. If the judgment binds the defendant it is not by its own operation, even with the Constitution behind it, but by an estoppel arising out of the defendant's contract with the plaintiff and the notice to defend. The ground of decision in both courts below was that there was no such estoppel, the duty and responsibility of the defendant being limited by the words that we have quoted from the contract, excluding any obligation other than those set forth. The decision, in other words, turned wholly on the construction of the contract as excluding a liability over in the event that happened. Even if wrong,

it did not deny the Michigan judgments their full effect, but denied the preliminary relation between the defendant and the party to them, without which the defendant remained a stranger to them, in spite of the notice to defend."

In support of the contention that the full faith and credit clause gives to this judgment the effect, as an estoppel, which would be given to it in New York, counsel have cited the case of *Hancock Nat. Bk.* v. *Farnum,* 176. U. S. 640, 643, where it is said that the "local effect must be recognized everywhere." But that was said in respect of a Kansas judgment in favor of a creditor of a Kansas corporation, in a suit by the creditor in another State against a stockholder of the Kansas corporation to subject him to liability as a shareholder to an amount equal to his stock. But under the law of Kansas and the general law a stockholder is represented by the corporation in all actions against the corporation for corporate liabilities. The stockholder is by the very law of corporate existence an integral part of the corporation, and is bound by a judgment against it in respect of any matter within the scope of corporate powers. See *Glenn* v. *Liggett,* 135 U. S. 533; *Great Western Telegraph Co.* v. *Purdy,* 162 U. S. 329, 336. In the *Farnum Case,* as in all cases of that class, there is a privity in interest and a representation in law of the stockholder by the corporation of which he is a member. The conclusiveness of such a judgment as binding each stockholder does not, however, extend to matters in which the corporation cannot be said to represent him. Thus it is said in the *Farnum Case:*

"We do not mean that it is conclusive as against any individual sued as a stockholder that he is one, or if one, that he has not already discharged by payment to some other creditor of the corporation the full measure of his liability, or that he has not claims against the corporation, or judgments against it, which he may, in law or equity,

as any debtor, whether by judgment or otherwise, set off against a claim or judgment, but in other respects it is an adjudication binding him. He is so far a part of the corporation that he is represented by it in the action against it."

There is no parallel between the relation of joint tort-feasors and that of a stockholder to his corporation. In the latter case, the stockholder, by the organic law of his corporation, is a member and represented by it so long as it keeps within its corporate powers. In the other instance one wrongdoer when sued does not represent those not sued, although they had coöperated in the wrong and were both liable.

The conclusion we reach is that the Massachusetts court did not deny full faith and credit to the New York judgment, and its decrees are therefore

                                          *Affirmed.*

MR. JUSTICE HUGHES took no part in the hearing or consideration of these cases.