STRATHLEVEN STEAMSHIP CO., Limited, v. BAULCH.

(Circuit Court of Appeals, Fourth Circuit. July 19, 1917.)

No. 1535.

1. NAVIGABLE WATERS ⊕�longdash23—OBSTRUCTION OF NAVIGATION—ANCHORAGE IN CHANNEL.

Whether the anchorage of a vessel in a navigable channel is in violation of Act March 3, 1899, c. 425, § 15, 30 Stat. 1152 (Comp. St. 1916, § 9920), which prohibits such anchorage "in such manner, as to prevent or obstruct the passage of other vessels or craft," depends upon the facts of the particular case. If a vessel anchors at a point where other vessels navigated with care can safely pass her, she does not violate the statute, but if she occupies so much of the channel as to practically impede its navigation or make the effort to pass her a dangerous maneuver, she unlawfully obstructs it.

2. INDEMNITY ⊕�longdash14—CONCLUSIVENESS OF JUDGMENT AGAINST INDEMNITEE.

An adjudication that a vessel was in fault for a collision because of the place and manner of her anchorage is conclusive of such fact in a subsequent suit by the vessel against her pilot to charge him with responsibility therefor.

3. INDEMNITY ⊕�longdash14—CONCLUSIVENESS OF JUDGMENT AGAINST INDEMNITEE.

That a vessel in a suit for collision unsuccessfully contended that she was not in fault does not estop her from alleging such fault in a subsequent suit to charge her pilot with responsibility therefor.

⊕�longdashFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4.** ADMIRALTY ☞19—JURISDICTION—SUIT AGAINST PILOT.

A suit by a vessel against her pilot to charge him with responsibility for her anchorage in an unlawful place is within the admiralty jurisdiction.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty by the Strathleven Steamship Company, Limited, owner of the steamship Strathleven, against William Baulch. Decree for respondent, and libelant appeals. Reversed.

Floyd Hughes, of Norfolk, Va. (Hughes & Vandeventer, of Norfolk, Va., and Ralph James M. Bullowa, of New York City, on the brief), for appellant.

Robert H. Talley, of Richmond, Va., for appelle,

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

KNAPP, Circuit Judge. The material facts are stated in the opinion of this court in the kindred case of The Strathleven, 213 Fed. 975, 130 C. C. A. 381. They appear in greater detail in the opinion of the District Court in that case, under the title of The Margaret J. Sanford (D. C.) 203 Fed. 331. The latter court found that the steamer Strathleven was solely at fault for the collision with a loaded scow which the tug Margaret J. Sanford had in tow, and accordingly dismissed the libel filed by the owner of the steamer against the tug. On appeal this court affirmed the finding that the steamer was at fault, but held that the tug was also at fault, and remanded the case, with directions "to modify the decree so as to adjudge both the Strathleven and the Sanford in fault and to provide that the damages and the costs below be divided equally between them."

[1] Such a decree having been entered, and in compliance therewith the owner of the tug having paid half the damages suffered by the Strathleven, this libel was filed to recover the other half from the pilot in charge of the steamer when the accident happened. The case was tried below on the testimony in the former suit with the added deposition of the master of the Strathleven to the effect that he had never before been in those waters, and that he depended entirely upon the pilot for the safe and proper anchoring of his vessel. The learned District Judge dismissed the libel upon the supposed authority of the decision of this court in the Strathleven Case, supra, which followed the earlier case of The Caldy, 153 Fed. 837, 83 C. C. A. 19, saying in his memorandum opinion:

"Under this corrected interpretation of the law, the pilot clearly had the right to anchor the Strathleven where he did, and he should not be held liable for the collision which subsequently occurred, brought about from causes not the result of the anchorage selected by him."

We are clearly of opinion that this ruling misconceives the import of the two decisions mentioned, construing and applying the act of Congress of March 3, 1899, which provides, among other things:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That it shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such manner as to prevent or obstruct the passage of other vessels or craft."

In the Caldy Case, supra, it was said:

"We do not think the Congress intended by Act March 3, 1899, * * * to absolutely forbid anchoring in navigable waters, except only at such places as the location of the vessel would necessarily prevent the passage of other vessels, or obstruct them in passing to such an extent as to make the effort to do so a dangerous maneuver."

This language was repeated in the Strathleven Case, supra, with citation of The City of Birmingham, 138 Fed. 559, 71 C. C. A. 115, and The Europe, 190 Fed. 478, 111 C. C. A. 307, in which the same conclusions were reached. It follows from these decisions that the question whether the statute has been violated depends upon the facts of the particular case. If a vessel anchors at a point in a channel where, notwithstanding such anchorage, other vessels navigated with care can safely pass, she does not violate the statute or render herself liable under the general rules of navigation, although she obstructs the channel to a certain extent. On the other hand, if the anchored vessel occupies so much of the channel as to practically impede its navigation or make the effort to pass her a "dangerous maneuver," she has placed herself in a position which the statute forbids, and must take the consequences of her unlawful act. Each case must be judged by its own circumstances, and the decisions above cited are far from holding that appellee had the right as matter of law to anchor the Strathleven where and as he did. If in point of fact he anchored her "in such manner as to prevent or obstruct the passage of other vessels or craft," he violated the statute in so doing, to say nothing of the harbor regulations, and thereby made himself liable for the resulting collision.

Now, in the original Strathleven Case the trial court held, in an opinion which states and discusses the facts at length, that the steamer was solely responsible for the accident, and unquestionably the fault of the steamer was the fault of the pilot. This court, though holding that the tug was also to blame, fully affirmed for reasons stated the finding and conclusion that the steamer was at fault, and therefore in that case the question of her liability has been finally determined.

But this case was heard on the testimony in the former suit with a further statement by the master of the Strathleven, which certainly adds nothing of advantage to the appellee. The proofs relating to the negligence of the steamer are precisely the same in both cases. This court has passed upon those proofs and held that they show as matter of fact and law that the collision was caused, in part at least, by the fault of the Strathleven, that is, of her pilot, and no good reason now appears for reaching a different conclusion. On the contrary, a careful review of the testimony confirms the views expressed in our former opinion as to the liability of the steamer. The dismissal of the present libel is therefore without other support on the merits than the mistaken notion that this court had so construed the statute as to give appellee the legal right "to anchor the Srathleven where he did." The erroneous ruling resulted from this misconception.

[2] Strictly speaking, the decision in the original case is not res adjudicata as to Baulch, as he was not a party to the proceeding, but it is res adjudicata as to the finding and conclusion of negligence in the matter of the place and manner of anchoring the steamer, for which the appellee was responsible, and his liability follows by operation of law. Burley v. Compagnie De Nav. Fran., 194 Fed. 335, 115 C. C. A. 199.

[3] To an extent at least the position now taken by the libelant is inconsistent with its claim in the former suit that the Strathleven was properly anchored and her pilot without fault for the collision with the tug. But that claim was not sustained by the trial court or by this court, both finding it contrary to the fact, and we deem it too plain for discussion that the case here presented comes within no recognized rule of estoppel. 16 Cyc. 769.

[4] The contention that admiralty has no jurisdiction in a case of this kind is scarcely debatable. It is refuted by high authority and by the fact of its frequent exercise without question. Sideracudi v. Mapes (D. C.) 3 Fed. 873; Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157.

The decree must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed.