## Bohmer et al. v. Bensinger.

Nov. 8, 1939.

Dodd & Dodd for appellants.

Edw. Bensinger, Jr., and Milliken & Handmaker for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Jefferson Circuit Court, Chancery Branch, First Division, entered in a declaratory judgment action brought by the appellee against the appellants, in which action the chancellor, as incidental to its declaration of right favorable to appellee, decreed quieted in appellee title to certain real estate located in Louisville, Kentucky, with right to possession thereof, said title adjudged being based upon an execution sale, and further awarded appellee certain rental funds in the hands of the co-appellant, Louisville Trust Company, the agreed agent appointed by the parties to collect and hold same pending the outcome of this litigation between them to determine the right of title thereto.

The facts out of which the instant suit arises, relating as they do, for the most part, to court proceedings and records had in the matter of the then pending suit of the receiver of the National Bank of Kentucky against its directors for negligence in lending its funds, appear to be undisputed and may be briefly stated as follows:

On July 8, 1935, in the equity action No. 649 in the Federal District Court for the Western District of Kentucky, styled A. M. Anderson, Receiver of the National Bank of Kentucky of Louisville, plaintiff, v. John S. Akers et al., defendants, 11 F. Supp. 9 (hereinafter referred to as the "directors' case"), the plaintiff receiver recovered a judgment against Charles H. Bohmer and some thirty-five other defendants, who were also former directors of the bank, for sums of money ranging up to $6,041,262.43. This judgment was based upon claims of the receiver of the bank arising out of five principal items, to-wit: For monies supplied by the bank while the defendants were directors to (a) Kentucky Wagon Manufacturing Co.; (b) Murray Rubber Co.; (c) Wakefield & Co.; (d) E. B. Norman & Co.; and (e) loans collateraled in whole or in part by stock of the Banco Kentucky Co.

The amounts adjudged against Charles H. Bohmer on the above items (as same are set out in Section 6 of the judgment, filed herein as exhibit "B") are as follows:

| | |
|---|---:|
| (a) | $ 598,588.76 |
| (b) | 147,980.33 |
| (e) | 1,594,906.89 |

making a total of $2,341,475.98, plus interest and costs, for which he was held liable, as being monies of the National Bank of Kentucky which he improperly and negligently participated in lending during the term he served it as director.

Section 45 of the decree, as to the liability of the directors for monies supplied or advanced to the wagon company (item (a) supra), adjudges that:

"Defendants, Bloch, Bohmer, Dodd, Garnett, Gray, Helm, Hieatt, Kohn, Rutledge's representative and Stites are liable for periods 4 to 13, both inclusive, aggregating Five Hundred Ninety-eight Thousand Five Hundred Eighty-eight and 76/100 Dollars ($598,588.76)."

As to item (e) supra, with reference to loans collateraled in whole or in part by stock of the Banco Kentucky Company, Section 45 further adjudges that:

"The defendants, Bloch, Bohmer, Dodd, Garnett, Gray, Helm, Hieatt, Kelley's representative,

Kohn, Lyons, Rutledge's representative, and Stites are liable for groups one to eight, inclusive, aggregating One Million, Five Hundred Ninety-four Thousand, Nine Hundred Six and 89/100 Dollars ($1,594,906.89)."

As to item (b), which represented loans made to the Murray Rubber Company and for which the directors named were held liable, it appears that Charles H. Bohmer was by the judgment held liable for a sum different from that for which any other of the named directors were held liable.

Also, by Section 50 of the judgment, it was held that Bohmer was jointly liable with all the defendants for the said loans made and it was therein further ordered that any money received from any defendant on any of the amounts adjudged against any defendant, on any of the accounts (a), (b), (c), (d) and (e), should be applied as a credit in favor of all the defendants and that the payment of any of the said items of the judgment made by any of the defendants satisfied that item as against all the other defendant directors against whom it was adjudged.

On February 3, 1936, the clerk of the Federal District Court issued, at the direction of the bank's receiver, Anderson, executions on the judgment entered against the directors, as stated supra, on July 8, 1935.

Among the executions issued was one against Charles H. Bohmer, which was delivered to the marshal of the District Court and on February 6 by him levied against Bohmer on certain of his real estate in Louisville, Kentucky, which was, after its due appraisement at $6,700 and advertisement of place and time of sale, accordingly offered for sale, when it was sold to the appellee, as the highest and best bidder, for the sum of $5,200, which amount appellee, as its purchaser, paid in cash to the marshal, who turned over this amount paid him to the plaintiff bank receiver, who thereupon, executed deed to appellee, which was duly recorded by him.

Following rendition of the judgment in the "directors' case," on July 8, 1935, an appeal was taken therefrom, without supersedeas, to the Circuit Court of Appeals, seeking a reversal of the judgment. There, the case was reversed, when a writ of certiorari was prosecuted to the Supreme Court, Anderson v. Atherton, 302 U. S. 643, 58 S. Ct. 53, 82 L. Ed. 500, which remanded

the case back to the Circuit Court of Appeals, 6 Cir., 86 F. (2d) 518, for its decision on the question of the liability of the directors on the ground of their negligence in permitting the excessive loans from which losses resulted to the bank, rather than upon the statutory ground upon which liability had been adjudged.

Later, the Circuit Court, in conformity with the direction given by the mandate, reversed the judgment of the Federal District Court and remanded the case back to it, with the direction that it enter a decree in conformity with its opinion. 6 Cir., 99 F. (2d) 883.

Pending the determination of the appeal, prosecuted without supersedeas, as stated, to the Circuit Court of Appeals, the appellee, having purchased and been deeded the property in question, and under which deed he was claiming both the title and right to possession of it, notified the tenant of the property that he was to pay the rent, accruing under his earlier rental contract with Bohmer, to him, while, on the other hand, Mr. Bohmer, at the same time, notified the tenant that he was entitled to the rents and demanded that they be paid to him.

These conflicting rental claims thus made by both claimants, serving to confuse the tenant as to whom he should pay this rent they each were demanding of him, Bohmer and Bensinger, the purchaser and appellee, entered into a written agreement on July 31, 1936, by which they agreed upon and designated the Louisville Trust Company as their rental agent, who was to collect the rents of the tenant, pay taxes, make repairs, etc., and hold the net rentals until the pending appeal of the "directors' case" might be decided, with the further proviso that if decided adversely to Bohmer, the rentals should be paid to Bensinger; if otherwise, to Bohmer.

It was further by the agreement expressly stipulated that the making of this agreement was without prejudice to the rights of either of the parties to the property involved, or the accruing rentals, or to the right of Mr. Bohmer's wife to inchoate dower therein, but that it was made for the sole purpose of protecting the property itself, the tenant in payment of rentals thereon and to preserve the status quo.

The Louisville Trust Company accepted the appointment provided for by the agreement and proceeded to carry out the duties of the agency as thereby di-

rected. Following this, on April 17, 1937, Mrs. Bohmer, the wife of Charles Bohmer, died, her death effecting the elimination of any claim she might have had to inchoate dower.

About a year following her death, Mr. Bohmer died testate, leaving as his heirs-at-law a son, Alvin P. Bohmer, two daughters, Mrs. Smart and Mrs. Warren, who with their respective spouses, the executor of Mr. Bohmer's estate and the Louisville Trust Company, were made defendants in this the declaratory judgment action filed by appellee on January 11, 1939, seeking the relief, as stated supra, of having his title quieted to the property purchased at the execution sale and his right established to the accrued rentals collected by the Louisville Trust Company.

Following the decision of the appeal by the Circuit Court of Appeals, modifying the District Court's judgment and as modified affirming it, and the filing of the Circuit Court's decision in the District Court, on December 31, 1938, an agreement to compromise the liability imposed upon the directors by the decree, including the liability of Charles Bohmer, deceased, was entered into by the bank receiver and the defendant directors (filed as an exhibit with appellee's second amended petition), which was subscribed by Bohmer's executor and ratified by his heirs.

The agreement by two of its clauses provided that:

"The said Receiver joins herein for the sole purpose of agreeing, and does hereby agree, to accept

"(1) Said payment of $2,500,000.00; and

"(2) The moneys heretofore realized by execution sales; and

"(3) The $100,000.00 directed to be applied to the satisfaction of the claim of the said Receiver against the estate of Brainard Lemon * * *; and

"(4) The release by the second parties of all their right, title, and interest in the collateral specified in Sections 53 and 54 of the decree above referred to, entered July 8th, 1935, and the income therefrom, in full satisfaction of all claims asserted by the Receiver against each and every one of the

second parties in said cause entitled 'A. M. Anderson, Receiver of the National Bank of Kentucky v. John S. Akers, et al.,' in Equity No. 649, and *to release each and every one of the second parties from their respective liabilities under any decree* or judgment heretofore or hereafter entered therein * * *." (Italics ours.)

By a further clause it provided that:

> "*Each of the parties of the second part hereby expressly consents to the retention by the Receiver of said cash proceeds realized from sales on execution* * * *; provided a full and complete settlement of the liability of all the parties of the second part under said decree is effected, as hereinabove provided for.*" (Italics ours.)

After the Bohmer heirs and the Louisville Trust Company had refused to release the rental money in the hands of the trust company, appellee in January, 1939, as stated supra, filed this declaratory judgment action and thereafter filed three amendments to his original petition, to which the appellants' demurrer was extended and which, upon argument heard, was overruled by the court, when, the appellants declining to plead further, the court entered a judgment in favor of the appellee, from which this appeal is prosecuted, asking its reversal.

By the challenged judgment, the court in substance decreed: (1) That the action was a declaratory judgment action, concerning the rights of the parties in the therein described tract of land and that the action arose out of the deed made appellee by the U. S. marshal as its purchaser at its execution sale; (2) that the deed so made appellee was valid and vested in him fee simple title to the property and appellants had no right, title or interest in the property; (3) that appellee's title to the said property be quieted, free from any interest or claim of the appellants thereto; and (4) that appellee acquired title by the marshal's deed, executed him July 6, 1936, since when he had been the owner of and entitled to the possession of the real estate and all income therefrom.

The judgment further ordered the defendant trust company to pay over to appellee all rent funds remaining in its hands which were deposited with it pursuant

to the parties' agreement made, as stated supra, with respect thereto.

The chancellor by his written opinion, in accord with which this judgment was drawn, after a careful consideration of the record, setting out the terms of the district court's judgment of July 8, 1935, against the defendant directors, and on which the "several" execution was issued against Bohmer, said:

> "A judgment, as I understand it, may be: (a) joint, (b) several, or (c) joint and several. The execution was several. If the judgment is joint a several execution is a nullity. Tanner v. Grant, 10 Bush [362], 363. However, I think this judgment is either several or joint and several. In either latter instance I am of the opinion that a several execution is proper."

Appellee contends that the District Court's judgment was a "several" judgment, in that it was based on the provisions of Section 93, title 12, U. S. C. A. (Section 5239, U. S. Revised Statutes), which in part provides:

> "In cases of such violation, every director who participated in or assented to the same shall be held liable in *his personal and individual capacity* for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation." (Italics ours.)

The federal courts have construed this section as imposing a *several liability*.

In Chesbrough v. Woodworth, 6 Cir., 195 F. 875, at page 880, the court, in construing the above section, said:

> "*The liability of the directors upon such a subject-matter is several.* The plaintiff may arbitrarily select one as sole defendant or two or more to be joined as defendants." (Italics ours.)

Also, in Gamble v. Brown, 4 Cir., 29 F. (2d) 366, at page 380, it was said that:

> "The argument is that, since the directors, if liable at all, were liable as joint tort-feasors, the release of certain defendants releases all the rest. * * * Each director is liable in his personal and

individual capacity, and may be sued alone or joint-
ly * * * whether his liability is based upon a
failure to perform a statutory or a common-law
duty. Corsicana National Bank v. Johnson, 251 U.
S. 68, 40 S. Ct. 82, 64 L. Ed. 141; Bigelow v. Old
Dominion Copper Mining & Smelting Co., 225 U. S.
111, 132, 32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas.
1913E, 875.''

Such being the construction of this section, as im-
posing a several liability on the bank directors, which
was imposed by the judgment of the District Court and
under which the several execution here involved was
issued, we are of the opinion that the lower court's·
judgment should not be held to be violative of Section
1652, Kentucky Statutes, providing that ''on a joint
judgment against several, the execution must be joint,''
and therefore we are led to approve the holding of the
chancellor that the District Court's judgment being
either several, or joint and several, in either instance
the several execution issued thereon was proper, even
conceding that the law of Kentucky controls the sales
of real estate on executions issued out of the federal
courts in Kentucky.

The appellants insistently urge as a ground for re-
versal of the judgment that the lower court erred in pro-
ceeding with the trial of the case upon the theory that
by virtue of the deed to appellee, he became entitled to
the rents on this property. They contend that the sale
of this property under execution never operated to di-
vest Bohmer of his right to enjoyment and control of
the property until he had been evicted by a writ of pos-
session, which was here never done.

As to this, they state that appellee never even al-
leged in his petition or his various amendments there-
to that he either sought or obtained a writ of possession
to oust Bohmer, with the result that Bohmer, under the
law, remained, even after the execution sale, entitled
to these rents, as he was in law in possession and con-
trol of the property.

As to this, it is to be noted, as argued by appellee,
that he in his petition alleged that he was in possession
of the property at the time the petition was filed, which
allegation was not denied by a pleading but that appell-
lants admitted such alleged fact for the purpose of their
demurrer, which was overruled, when they declined to

plead further, leaving on the pleadings their admission of that fact, if such allegation was one of fact properly made.

Further was the validity of appellee's claim or right to possession of this property, purchased and deeded him, recognized as contingent upon or turning on the outcome of the directors' appeal, prosecuted from the District Court's judgment, by the terms of their agreement of July 31, 1936, providing that if it were decided adversely to Mr. Bohmer, the rentals (following the right to possession) were to be paid to appellee; if otherwise decided, they were to be paid to Bohmer.

Further, it is to be noted in this connection that while the matter of appellee's title and right of possession to this property was pending upon the outcome of the appeal, determining the question of the validity of the District Court's judgment and execution sale of the property made thereunder, the appellants did, on December 31, 1938, enter into an agreement with the bank receiver to compromise the liability imposed upon the director defendants (including the liability imposed upon the Charles H. Bohmer estate) and which agreement was accepted and subscribed by Bohmer's executor and ratified by his heirs.

Under its stated provisions, the receiver agreed with them to accept payment of the stated sum and "the moneys heretofore realized by execution sales * * * in full satisfaction of all claims asserted by the Receiver against each and every one of the second parties (including appellants) in said cause (Anderson, Receiver, etc., v. Akers, etc.) and to release each and every one of the second parties from their respective liabilities under any decree or judgment heretofore or hereafter entered therein." (Parentheses ours.)

Further it was agreed that in consideration thereof, "each of the parties of the second part hereby expressly consents to the retention by the Receiver of said cash proceeds realized from sales on execution."

In view of these agreements made by the appellants, the one with the appellee stipulating that in the event of the validity of the execution sale to appellee, here in controversy, being upheld, he was to have the net rentals accruing upon the property subsequent to its purchase, and the other made by the appellants with the

bank receiver, in compromise settlement of the liability imposed upon the directors by the decision of the Circuit Court of Appeals, whereby they agreed that the proceeds of the marshal's execution sale of the property involved, paid by appellee in the sum of $5,200, as purchaser thereof, should be retained by the receiver, together with all cash proceeds realized from sales on execution, we are constrained to conclude that such ratification of the execution sale made to appellee was effective to prevent appellants from thereafter questioning the validity of the sale, as vesting appellee with title and right of possession thereunder, when agreeing with the receiver that he was to retain the price paid for the property by appellee at its execution sale.

Certainly the ruling of the chancellor was correct in holding that the appellants were not in a position to question the validity of the sale of the property and the right to rentals subsequently accruing thereon, after agreeing that the purchase price paid by appellee for the property at this execution sale should be retained by the bank receiver, as representing the cash proceeds realized by him from the execution sale of this property.

We are, therefore, of the opinion that the decree of the chancellor rendered under the facts and circumstances here presented was a proper one and the same is affirmed.